IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03488-DDD-SBP

KOSMICKI INVESTMENT SERVICES LLC,

    Plaintiff,

v.

JOSEPH DURAN,

    Defendant.

---

**ORDER GRANTING MOTION TO COMPEL**

---

**Susan Prose, United States Magistrate Judge**

This matter is before this court on Plaintiff Kosmicki Investment Services LLC's Motion to Compel ("Motion" or "Motion to Compel"). ECF No. 56. The undersigned Magistrate Judge considers the Motion pursuant to 28 U.S.C. § 636(b)(1)(A) and the Memorandum dated June 13, 2023, ECF No. 57, referring the Motion. The court heard oral argument on the Motion on July 27, 2023, and August 1, 2023. ECF Nos. 62, 65. The court has carefully reviewed and considered the Motion, the case file, the applicable case law, and the arguments set forth by counsel for both parties. For the reasons set forth herein, this court **GRANTS** the Motion.

**BACKGROUND**

The court begins with a recitation of the factual and complicated procedural history of this action, including a previous discovery dispute, which is necessary to understand the court's resolution of the issues raised in the pending Motion to Compel.

***The underlying claims.*** Plaintiff Kosmicki Investment Services LLC ("KIS") is a

provider of financial and investment services. ECF No. 1, Compl. ¶ 5. KIS alleges that Mr. Duran was an employee of KIS from September 15, 2018, until August 21, 2020, when he was terminated. *Id.* ¶¶ 6, 9. During Mr. Duran's tenure with KIS, he "had access to KIS's highly confidential customer financial information, know-how, intellectual property [and] personal and financial information of customers," which was stored on cloud databases "including Redtail CRM, Redtail Imaging, www.V2020.COM., and MoneyGuidePro." *Id.* ¶¶ 6-8. Mr. Duran's access to "KIS's protected computers and electronically stored financial and customer information . . . was terminated on September 1, 2020. *Id.* ¶ 12.

In discovery in a Colorado state court action between the parties, KIS allegedly "learned that [Mr. Duran] accessed confidential financial information housed within the Redtail CRM, Redtail Imaging, www.V2020.com, and MoneyGuidePro computer servers without authorization after [his] termination from KIS, and that [Mr. Duran] had hacked KIS's computer systems." *Id.* A report of a computer forensics investigator retained by KIS found that, after Mr. Duran's termination from KIS, he improperly "accessed protected computers and downloaded highly confidential information" of KIS. *Id.* ¶ 14. KIS contends that Mr. Duran "has other [KIS] files and information stored on his various computer devices"—information which he is allegedly using at his new place of employment. *Id.* ¶¶ 15-16. According to KIS, Mr. Duran "has engaged in unauthorized access of protected computers for purposes of defrauding others." *Id.* ¶ 16.

Based on these allegations, KIS brings a claim against Mr. Duran under the Computer Fraud and Abuse Act, *id.* ¶¶ 18-23, a criminal statute that provides for a private right of action if certain criteria are met. *See* 18 U.S.C. § 1030(g) ("Any person who suffers damages or loss by reason of a violation of this section may maintain a civil action against the violator to obtain

compensatory damages and injunctive relief or other equitable relief . . ."). KIS also raises claims for conversion and civil theft under Colorado law. Compl. ¶¶ 24-37.

*The first discovery dispute: the "Seagate Drive" and the review by a Special Master.* In a Joint Discovery Conference Position Statement submitted to Magistrate Judge N. Reid Neureiter, the United States Magistrate Judge previously assigned to this case, on August 15, 2022, the parties outlined a discovery dispute involving a Seagate-branded hard drive (the "Seagate Drive") in Mr. Duran's possession. ECF No. 25-1 at 1. According to KIS, Mr. Duran had used the device "to download and retain electronic records from KIS's computer on August 24, 2020," *id.*—three days after Mr. Duran's termination from KIS. KIS requested that the court compel Mr. Duran to produce the Seagate Drive to KIS for the purpose of determining whether Mr. Duran had, in fact, "download[ed] and retain[ed] electronic records from KIS's computer" onto the Seagate Drive. *Id.* There appears to have been no dispute that, at the time the first discovery dispute arose, the Seagate Drive was in Mr. Duran's possession.

At a discovery hearing on August 16, 2022, Judge Neureiter ordered Mr. Duran's counsel to produce the Seagate Drive to Crowe LLP ("Crowe"), a firm retained by KIS to conduct a forensic examination of the drive. Judge Neureiter emphasized that access to the Seagate Drive should cease so that the data on the drive would not be compromised:

> <u>Defense counsel, there shouldn't be any more access to the Seagate Drive</u>. I'm giving you until Friday [August 19, 2022] to produce it, not so that somebody can get on and download more information or upload information, because anytime you turn on an electronic device it tends to overwrite stuff. . . . So, that shouldn't be accessed anymore and should be disconnected and provided in the form it is today as of 11:10 AM when you deliver it by Friday.

3

8/16/2022 Hr'g Tr.[1] 11:09:59 a.m.-11:10:44 a.m. (emphasis added). In response, counsel for Mr. Duran assured the court that the Seagate Drive had not been accessed and would not be accessed: "The drive has been in an envelope for some time now. *It will not be accessed*. It will be forwarded on to Crowe as ordered by the Court. There is absolutely no reason for anyone to believe that any spoliation of any data [will occur.]" *Id.* 11:11:10 a.m.-11:11:35 a.m. (emphasis added).

In fact, contrary to Judge Neureiter's explicit order, the record shows that Mr. Duran's defense team did *not* produce the Seagate Drive to Crowe by the court-imposed deadline of August 19, 2022, nor did they adhere to Judge Neureiter's directive to leave the drive untouched. On August 18, 2022, Jay Levine, a trial consultant for Mr. Duran, extracted a portion of the data from the drive, which apparently was then sent to Crowe on another device. 9/21/2022 Hr'g Tr. 3:06:07 p.m.-3:06:27 p.m. This cherry-picking of data was brought to light at a second discovery hearing before Judge Neureiter on September 21, 2022, when Mr. Duran's attorney argued that only a portion of the data on the Seagate Drive was relevant to the case. *Id.* 3:30:39 p.m.-3:31:45 p.m. (attorney's statements that Levine had copied material for Crowe's review only up to "the first of September [of 2020]," allegedly because "nothing could have been downloaded after the 25th of August 2020 because [Mr. Duran] didn't have access to [KIS's computers]" after that date).

Not only did Mr. Levine segregate certain data from the Seagate Drive after the August

---

[1] Previous discovery orders in this matter were issued on the record at court hearings. Neither party has ordered formal transcripts of the hearings. The informal transcriptions referenced in this order are based on a careful review of the audio recordings by this court.

16, 2022 discovery hearing (contrary to Judge Neureiter's order), he also made a copy of the Seagate Drive (contrary to Judge Neureiter's order). 9/21/2022 Hr'g Tr. 3:30:35 p.m.-3:31:11 p.m.; 7/27/2023 Hr'g Tr. 12:21:29 p.m.-12:22:11 p.m. As a result, the metadata from each of the documents contained on the Seagate Drive was inadvertently "overwritten." 9/21/2022 Hr'g Tr. at 3:06:07 p.m.-3:07:11 p.m. Further, seven documents on the Seagate Drive appear to have been *created* on August 18, 2022. *Id.* 3:07:11 p.m.-3:07:36 p.m.

After the second discovery hearing on September 21, 2022, Judge Neureiter appointed a Special Master to review the files on the Seagate Drive. ECF No. 34. The Special Master was tasked with "reviewing the documents or files on the disputed Seagate hard drive and determining whether the documents/files Defendant designated as privileged or personal and confidential are properly withheld from disclosure from Plaintiff." ECF No. 34 at 2.

The Special Master reviewed thousands of documents contained on the Seagate Drive, as well as Mr. Duran's privilege log of the contents of the drive, and ultimately determined that Mr. Duran had not complied with Federal Rule of Civil Procedure 26(b)(5)(A). ECF No. 42, March 8, 2023 R. & R. No. 1 at 4. The Special Master determined that, "[w]ith very limited exception . . . the items contained on the Seagate drive are *not* protected from production by any claim of privilege or work-product." *Id.* at 4 (emphasis added). He also found that, "on balance the material contained on the drive *is properly characterized as the property of KIS*," citing to numerous examples of KIS records. *Id.* at 4-5 (emphasis added).

Judge Neureiter adopted the Special Master's Report and Recommendation on April 26, 2023, finding that the objections that Mr. Duran had filed were "little more than a request for a do-over" that failed to "identify with particularity any legal errors" by the Special Master. ECF

5

No. 52 at 8.² Judge Neureiter ordered the defense to "comply with the dictates of the Master's Report within five business days from the date of this Order" and return to KIS "[a]ny materials not expressly" exempted by the Special Master's Report and Recommendation. *Id.*³ At this time, it is unclear to this court whether the information the Special Master determined belonged to KIS has in fact been secured and returned.⁴

***The pending Motion to Compel.*** On June 12, 2023, KIS filed the Motion to Compel now before this court for resolution. The Motion effectively raises the same concerns that drove KIS to press for the examination and return of its information on the Seagate Drive; this time, KIS seeks the return of KIS information that may be found on Mr. Duran's personal laptop.

In the Motion, KIS requests that Mr. Duran produce his personal laptop computer for inspection by Crowe, the forensic investigation firm retained by KIS, "for the purposes of determining whether Defendant copied any of the files containing the confidential information of the Company and its clients to the laptop computer, and removing them if such files are present." Mot. at 2. KIS argues that the laptop "contains documents and information that the Special

---

² At the discovery hearing conducted by this court on July 27, 2023, Mr. Duran's counsel claimed not to have appreciated the "sacrosanct" nature of the findings by the Special Master. 7/27/2023 Hr'g Tr. 11:24:00 a.m.-11:24:12 a.m. But the court made a clear record on that score: "[I]n reviewing the actions of the Special Master, the parties will be deemed to have stipulated that findings of fact made by the Special Master will be final, except for a party who objects to this portion of the Order, in writing and filed within 7 days of this Order Appointing Special Master." ECF No. 34 at 3 ¶ 4. Mr. Duran did not object to that provision.
³ There were also twelve files on the Seagate Drive that were password protected and inaccessible to the Special Master. R. & R. No. 1 at 6-7. Mr. Duran was only able to provide access to two of those documents, and he "waived any further objections to these previously inaccessible materials." ECF No. 53, 4/27/2023 R. & R. No. 2 at 1.
⁴ It appears, for example, that a copy of the contents of the Seagate Drive should not remain in the possession of Mr. Levine, who is working for the defense.

Master has ordered to be returned to the Company." *Id.* at 7; *id.* at 2 (asserting that review of the laptop "extends the Special Master's findings to the Defendant's personal laptop computer"). As support for this position, KIS points to Mr. Duran's own admissions concerning his use of the laptop, i.e., that the laptop "is used in conjunction with the Seagate drive" and that the Seagate Drive "was connected to my laptop computer on multiple occasions." 4/20/2023 Responses to Plaintiff's Second Set of Written Discovery, ECF No. 56-3 at 5; 4/7/2022 F.R.C.P. 26(a)(1) Initial Disclosure, ECF No. 56-2 at 5. Indeed, at the time Mr. Duran made his initial disclosures, he went so far as to inform KIS that his own counsel would "have a forensic report completed regarding the laptop and Seagate drive, for production to the Plaintiff after reviewing the information provided by counsel for the Plaintiff regarding their forensic evaluation." ECF No. 56-3 at 5.

Mr. Duran now takes a different view, resisting the production of the laptop that he concedes to have "used in conjunction with the Seagate drive."[5] He argues that he should not be required to produce the contents of his personal laptop for essentially three reasons: (1) KIS has not pointed to any documents found on the Seagate Drive that were inappropriately obtained

---

[5] Mr. Duran did not respond to the Motion to Compel and therefore could be deemed to have waived his right to do so. *David v. Fed. Bureau of Prisons*, No. 15-cv-00884-WJM-MJW, 2017 WL 8787043, at *1 (D. Colo. Nov. 15, 2017) (treating a motion to compel as unopposed where no response was filed); *see also, e.g.*, *Armstrong v. Swanson*, No. 08-cv-00194-MSK-MEH, 2009 WL 1938793, at *7 (D. Colo. July 2, 2009) (holding that non-movant "waive[s] the opportunity to assert any additional facts" by failing to respond to a motion) (citing *Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002)). Approximately 20 minutes before the scheduled hearing on the Motion to Compel, Mr. Duran filed a last-minute request to reopen briefing to allow him to file a written response, which the court denied. *See* ECF Nos. 60, 62. Nevertheless, at the hearing, the court allowed Mr. Duran's counsel to present a lengthy oral argument setting forth his client's position in opposition to the Motion to Compel. ECF No. 62.

and/or retained by Mr. Duran that could arguably be located on the laptop; (2) Mr. Duran, in his view, is bound to win summary judgment in this case; and (3) the laptop contains Mr. Duran's personal and business information and documents that are not the subject of this dispute, and it would unduly burden Mr. Duran to be without it for an extended period of time.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain:

> [D]iscovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Relevance under Rule 26(b)(1) is "broadly construed" in relation to discovery, and a request is considered relevant "if there is 'any possibility' that the information sought may be relevant[.]" *Standon v. Encompass Indem. Co.*, No. 12-cv-00801-PAB-KLM, 2013 WL 2423094, at *2 (D. Colo. June 4, 2013) (quoting *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005)).

"Thus, relevance is not so narrowly construed as to limit a story to its final chapter, and neither party is entitled to make it impossible for all meaningful parts of the story to be told." *Brackett v. Walmart Inc.*, No. 20-cv-01304-KLM, 2021 WL 1749975, at *3 (D. Colo. May 4, 2021). The party opposing discovery "has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under [Rule 26], or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id.*

8

(quoting *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004)).

"[D]iscovery rulings are within the broad discretion of the trial court, and [the Tenth Circuit] will not disturb them absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Kenno v. Colo. Governor's Off. of Info. Tech.*, No. 21-1353, 2023 WL 2967692, at *7 (10th Cir. Apr. 17, 2023) (internal quotation marks omitted) (citing *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1386 (10th Cir. 1994)); *see also S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (discovery rulings are reviewed for abuse of discretion).

## ANALYSIS

This court concludes that the review of Mr. Duran's laptop sought by KIS is both relevant and proportional to the needs of the case. The court therefore orders the production of Mr. Duran's personal laptop pursuant to the protocols set forth below.

***Relevance.*** The record here readily establishes that the laptop may contain relevant information, just as the Seagate Drive—which has been connected to this very laptop—has been found by a Special Master to contain information that "is properly characterized as the property of KIS." R. & R. No. 1 at 4-5. The contents of Mr. Duran's laptop, like the contents of the Seagate Drive, go to the very essence of a dispute that hinges on allegations that Mr. Duran "engaged in unauthorized access to KIS's computer systems[;]" has "breach[ed] . . . KIS's protected computers[;]" has improperly "accessed protected computers and downloaded highly confidential financial information[;]" and has stored "Company files and information . . . <u>on his various computer devices that the Plaintiff will seek disclosure of in this litigation</u>." Compl. ¶¶ 12, 14, 15 (emphasis added); *see also White v. Graceland Coll. Ctr. For Prof'l Dev. &*

9

*Lifelong Learning, Inc.*, No. 07-2319-CM, 2009 WL 722056, at *7 (D. Kan. Mar. 18, 2009) (noting that "many courts now consider requests for inspection or requests for forensic or mirror imaging of computers to be neither routine nor extraordinary," and noting specific relevance in situations where "compelling production and inspection of computer hard drives and forensic imagining where trade secrets and electronic evidence are involved").

Mr. Duran's own representations throughout the case emphasize the relevance of material contained on his personal laptop. He admits that the Seagate Drive "was connected to [his] laptop computer on multiple occasions" and "used in conjunction with the Seagate drive." ECF No. 56-3 at 5; ECF No. 56-2 at 5. Early in the litigation, he volunteered that his counsel would "have a forensic report completed regarding the laptop and Seagate drive," ECF No. 56-3 at 5., although he never followed through. Mr. Duran has not explained why his laptop, which he plainly deemed to be relevant at one point in the case, is no longer relevant. The court finds nothing to justify Mr. Duran's change in position, nor is it swayed by the arguments he makes now, which the court addresses in turn.

First, Mr. Duran contends that KIS allegedly has identified no documents located on the Seagate Drive that were improperly retained by Mr. Duran. *See* 7/27/2023 Hr'g Tr. 11:27:04 a.m.-11:27:07 a.m. (noting the absence of any statements by KIS concerning such documents, and arguing that "[y]ou're not going to see that because it doesn't exist"). According to counsel for Mr. Duran, that means he should not have to surrender his laptop for review: "If there is nothing on the Seagate Drive that the Plaintiff can point to that establishes remotely any of the elements of computer fraud abuse, there is not going to be any found on the . . . laptop." *Id.* 11:32:33 a.m.-11:32:54 a.m.

The court finds this argument inconsequential to the relevance analysis. To begin, it rests on mere supposition. Nothing in the record suggests that KIS would have been obliged, at this stage of the case, to specifically identify for Mr. Duran all documents that he may have improperly taken from KIS. Whether Mr. Duran was entitled to retain a particular documents is a question of law that remains to be answered in this case. How *Mr. Duran* thinks that question will be answered—and his assessment that "Plaintiff's chances of surviving a motion for summary judgment . . . are nonexistent," *see* 7/27/2023 Hr'g Tr. 11:17:17 a.m.-11:17:23 a.m.—has no bearing on the standard this court applies in evaluating whether KIS is entitled to the discovery it seeks: whether "there is '*any possibility*' that the information sought may be relevant." *Standon*, 2013 WL 2423094, at *2 (emphasis added).[6] The court finds that there is. While it cannot be known at this point whether Mr. Duran's laptop does in fact contain exactly the same files as the Seagate Drive, KIS is entitled to confirm that relevant information.

The court notes that KIS has alleged that Mr. Duran downloaded documents from various computer programs, each of which could have been accessed by Mr. Duran from his personal laptop and never saved to the Seagate Drive, rendering a separate investigation of the laptop necessary.[7] Compl. ¶ 12; *see also* 7/27/2023 Hr'g Tr. 12:16:54 p.m.-12:18:22 p.m. (responding to the court's question whether KIS believes that the laptop may contain company documents not

---

[6] Too, Mr. Duran's argument about summary judgment puts the cart before the horse. KIS is entitled to is entitled to continue to seek relevant discovery that may assist it in "establish[ing] the existence of an element essential to [its] case." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment.

[7] The court understands that Mr. Duran's access to these computer programs is in dispute. However, this factual dispute provides additional justification for allowing KIS to determine what, if anything, was downloaded directly onto the laptop.

on the Seagate Drive: "I fear it, yes. The reason I fear it, among others, is that we didn't have any clue that there was a Seagate hard drive originally either. We didn't know that documents were being downloaded, carried away. We didn't know that downloads were being made long after [Mr. Duran] departed the company."). Notably, counsel for Mr. Duran was unable to state with certainty at oral argument what was contained on the Seagate Drive or Mr. Duran's laptop, but only that he *believes* that "information from the computer would have gone on the Seagate drive but not the other way around." *Id.* 11:12:06 a.m.-11:12:43 a.m.

In sum, this court declines to conflate the discovery question at issue here with a pre-determination of the merits of the underlying claims in the action. The contents of the laptop are unquestionably relevant here. Moreover, an examination of the laptop may provide relevant information concerning the Seagate Drive and the underlying metadata that was compromised by Mr. Levine's access following Judge Neureiter's order on August 16, 2022.

***Proportionality.*** In considering whether the discovery sought is proportional, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Mr. Duran has not come forward with any argument demonstrating that production of the laptop is disproportionate under the circumstances present here, and the court finds no basis to conclude that it is.

For the reasons discussed above, the court finds that the contents of Mr. Duran's laptop are important here, in a case alleging a violation of the Computer Fraud and Abuse Act, where a Special Master has already determined that Mr. Duran is in possession of information that "is

properly characterized as the property of KIS." R. & R. No. 1 at 4-5. Given that the laptop was previously "used in conjunction with the Seagate drive" and that the Seagate Drive "was connected to [Mr. Duran's] laptop computer on multiple occasions," it must be anticipated that there will likewise be information on the laptop that will be determined to be KIS's property. At a minimum, the record indicates there is some possibility that KIS property will be found on the laptop. *See Standon*, 2013 WL 2423094, at *2 ("any possibility" is the standard for evaluating relevance). And it is apparent that a court order directing that the laptop be produced for a forensic review is KIS's only means of gaining access to this relevant information.

However, the court is sensitive to the fact that the laptop contains Mr. Duran's personal and business information, and there is no doubt that surrendering the device will inconvenience Mr. Duran. To address that burden, the court directs the implementation of an ESI protocol that will allow for the imaging of Mr. Duran's laptop as quickly as possible and with as little inconvenience to Mr. Duran as possible. The parties are ordered to submit a joint proposed ESI protocol for the court to review and adopt. The proposed ESI protocol must address the process for conferring and resolving disputes regarding documents labeled as privileged or confidential by Mr. Duran. Unless otherwise noted in the ESI protocol, if such disputes cannot be resolved without court intervention, the court will direct the appointed Special Master Judge Michael A. Martinez (*see* ECF No. 34) to review the disputed documents before they are produced to Plaintiff to determine whether any of the documents are privileged, confidential, or personal to Mr. Duran.

## CONCLUSION

For the reasons stated above, this court hereby **GRANTS** Plaintiff's Motion to Compel,

ECF No. 53, and **ORDERS** that the parties submit a joint proposed ESI protocol to govern the production of the Defendant's personal laptop by <u>August 8, 2023</u>. As of August 1, 2023, the Defendant is hereby **ORDERED** not to delete any documents on his personal laptop until after it has been imaged for review by the parties and/or the Special Master.[8]

DATED: August 1, 2023            BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[8] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "*pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object").